### DARBY & CO v. SHANNON.

1. A. issued an attachment against C., an absent defendant, obtained order of publication and commenced publication, but, upon personal service being made on the defendant in North Carolina, the publication was discontinued, and judgment was taken by default more than twenty days after such personal service, but only forty-two days after order for publication. Under this judgment, the land attached was sold by the sheriff. Before this judgment was obtained, B., having issued a junior attachment upon this land as the property of C., moved to set aside the attachment for insufficiency in the affidavit. The judge ruled that a junior attaching creditor could not make such an objection, and refused the motion. After the sale, B. obtained judgment by default, and then instituted this action to have the sale set aside and the land resold. *Held*, that the action would not lie.

2. C. was the only person who could take advantage of the alleged insufficient service of the summons.

Before WITHERSPOON, J., Kershaw, June, 1882.

The opinion states the case.

*Mr. Ernest Moore,* for appellant.

*Messrs. R. E. Allison* and *Ira B. Jones,* contra.

July 16th, 1883.   The opinion of the court was delivered by

Mr. Justice McGowan.   This was an action to set aside a sale to the defendant Ira B. Jones, of a certain tract of land in Kershaw county, alleged to have been made under a judgment of Lewis H. Cole & Co. against the defendant Shannon.   The Circuit judge stated the facts as follows:

The defendants Lewis H. Cole & Co., sued the defendant Shannon, in Lancaster county, January 17th, 1881, for $146.87, and, on the same day, upon affidavit alleging "that the said William Shannon departed from this State on the 10th instant with intent to defraud his creditors, among them the plaintiffs; that the said William Shannon is about to dispose of his property to Stevens, English & Bro., of Monroe, N. C., with intent to defraud his creditors," the clerk of the court of Lancaster county issued a warrant of attachment to the sheriff of Kershaw county, which was levied on defendant's land in Kershaw county, referred to in the plaintiffs' complaint, on January 17th, 1881.   An order of publication was made January 27th, 1881, but, the defendant having been personally served with copy of summons at Charlotte, N. C., February 10th, 1881, the publication was discontinued, and an order for judgment by default was made at March Term, 1881.   A transcript of this judgment was filed in the clerk's office of Kershaw county on ———— day of ————, 1881, upon which execution was issued, under which the sheriff of Kershaw, on May 2d, 1881, sold the land of William Shannon, attached as aforesaid.   At that sale Ira B. Jones purchased the land for $195, took sheriff's title and went into possession.

On February 18th, 1881, the plaintiffs also sued Shannon in Lancaster, and procured a warrant of attachment from the clerk of the court directed to the sheriff of Kershaw county.   The affidavit alleged that "the defendant, William Shannon, is not a

resident of this State, but resides in the city of Charlotte, in the State of North Carolina." This attachment was also levied upon the same land of Shannon on February 23d, 1881. Judgment. by default against Shannon was rendered at Lancaster on June 23d, 1881, and transcript docketed in the clerk's office of Kershaw county on July 16th, 1881.

Prior to both attachments, Shannon had executed a mortgage to Stevens Brothers & English to secure a note for $319.72 and interest. The defendant Ira B. Jones admitted in his answer that he purchased the land subject to the prior lien of this mortgage.

At February Term, 1881, the plaintiffs moved on the attachment papers, to vacate the attachment issued in the case first mentioned of *Lewis H. Cole & Co.* v. *William Shannon,* which motion was dismissed by his Honor Judge Fraser, then presiding. They then commenced this action to set aside all the proceedings, attachment, judgment and sale of the land under the judgment, so as to make the said land liable under their attachment and judgment. The defendants Cole & Co. insisted that their attachment and judgment were regular, and the sale of the land thereunder valid, subject to the mortgage debt aforesaid; that, even if the attachment proceedings were irregular, the motion of plaintiffs to vacate them having been dismissed and no appeal taken, the matter is now *res adjudicata,* so far as the attachment is concerned.

The case came on for hearing before Judge Witherspoon, who held that neither the attachment proceedings in the case of *Lewis H. Cole & Co.* v. *Shannon,* nor the judgment and sale under it to Ira B. Jones, were void, and dismissed the complaint. From this judgment the plaintiffs appealed upon the following exceptions :

1. " Because the court erred, it is respectfully submitted, in holding that a paper purporting to be a warrant of attachment issued by the clerk of a Circuit Court under the authority of section 252 of the code of procedure, was valid as such, although none of the facts specified in said section were made to appear by the affidavit upon which said paper was issued.

2. " Because the court erred, it is respectfully submitted, in

holding that by a levy under a paper purporting to be a warrant of attachment issued by the clerk of a Circuit Court on January 17th, 1881, at the suit of the defendants Lewis H. Cole & Co., against the defendant William Shannon, upon an affidavit, 'that the said William Shannon departed from this State on the 10th instant with intent to defraud his creditors, among them the said Lewis H. Cole & Co., and that the said William Shannon is about to dispose of his property to Stevens, English & Bro., of Monroe, N. C., with intent to defraud his creditors;' the said Lewis H. Cole & Co. obtained a valid lien upon the land of the said Shannon described in the complaint, and one superior to that obtained by these plaintiffs, by a levy upon the said land under a warrant of attachment regularly issued by the said clerk on February 18th, 1881, upon an affidavit alleging 'that the defendant William Shannon is not a resident of this State, but resides in the city of Charlotte, in the State of North Carolina,' and regular in all other respects.

3. "Because the court erred in holding that on March 10th, 1881, the Circuit Court of Common Pleas for the county of Lancaster, in said State, had jurisdiction in the case, Lewis H. Cole & Co. against William Shannon, by virtue of an order for the publication of the summons in said action made by the clerk of the said court on January 27th, 1881, publication thereof commenced on February 20th, 1881, and personal service thereof upon the said Shannon in the State of North Carolina, on February 2d, 1881, and that a judgment rendered in the said cause upon the day first aforesaid in favor of the said plaintiffs and against the said defendant therein was so far regular as to authorize the issuance of an execution thereon and the sale of the land described in the complaint herein thereunder.

4. "Because the court erred in holding that these plaintiffs were not entitled to have the land described in the complaint herein, sold and the proceeds applied, first, to the payment of the mortgage debt due to the defendants Stevens Brothers & English, and next to the satisfaction of the amount due these plaintiffs on the judgment obtained by them against the said defendant William Shannon, set forth in the complaint, which judgment debt

became a lien upon the said land at the date of the attachment aforestated.

5. "Because the court erred in holding that these plaintiffs were not entitled to have the land described in the complaint sold and the proceeds applied, first, to the payment of the senior liens held thereon by the defendants, Lewis H. Cole & Co. and Stevens Brothers & English, and, next, to the lien of these plaintiffs.

6. "Because the said court erred in dismissing the complaint."

These same plaintiffs, at the February Term of the court (1881) for Lancaster, after regular notice, made a motion to discharge the senior attachment of Cole & Co., upon the ground that the affidavit on which the attachment was issued was not sufficient, in that it averred the removal from the State and the purpose to dispose of his property by the defendant "with the intent to defraud his creditors," without stating any of the facts from which such inference was drawn, so as to enable the court to judge of the correctness of the conclusion. Judge Fraser heard the motion, and rendered judgment as follows: "The affidavit should have stated the facts on which the inference of the fraudulent intent was based. See 2 *Wait Pr.* 145, 146, and *Smith & Melton* v. *Walker*, 6 *S. C.* 174, 175, and 10 *S. C.* 467. The code, section 265, provides that in all cases a defendant may move to discharge an attachment as in other cases of provisional remedies. This, however, does not give the right to third parties. ' This privilege is not so extended as to allow a subsequent attachment creditor to move to vacate the prior attachment on the ground that it was irregularly issued. The only exception is where the attachment is founded on fraud, or what amounts to fraud.' See 2 *Wait Pr.* 184, and the cases there cited. It is, therefore, ordered that the motion be dismissed." From this judgment there was no appeal.

But now, ignoring that judgment, the plaintiffs are seeking to accomplish the same result in another way by this action, in which Judge Witherspoon held that the matter submitted to Judge Fraser was adjudged; and there is no specific exception to that part of his judgment. Whilst it was admitted in the argument here, that the ruling of Judge Fraser was right, and, not

appealed from, was binding on the plaintiffs, yet it was contended that that ruling did not affect the question made in this action, as the plaintiffs here are not seeking to have the senior attachment set aside, but only "a determination of the question as to whether the lien acquired by them is not superior to any rights of Cole & Co." We confess we do not see the difference suggested. The new expression only states the same matter in a different manner. The "superiority" of the liens is unalterably fixed by their respective dates, unless that of Cole & Co. is set aside as void, which was the real question in the motion, and, so far as the attachment is concerned, is the question here. The form of this proceeding, being an action, is somewhat different from that on the motion; but, with reference to the distinction between direct and collateral assaults, this does not differ from that. The actors in both proceedings are the same persons, and both involve the same question as to whether strangers to the attachment could make the point.

There was no possible need of further testimony in the action, for the point was purely legal, and heard "upon the papers." We regard the question raised here, as to the invalidity of the attachment lien, as identically the same as that made in the application to Judge Fraser, and decided by him without appeal. The truth is, as to form, the proceeding by motion was the proper one, and in accordance with the universal practice upon the subject. It is clear that no other form of proceeding was contemplated by the code. See latter part of section 263, which declares that "in all cases the defendant, or any person who establishes a right to the property attached, may move to discharge the attachment as in cases of other provisional remedies." It has been decided that this provision includes a motion to discharge the attachment on the ground of invalidity or irregularity. *Cureton* v. *Dargan*, 12 *S. C.* 122. And, in the following cases, the question was made by motion of the defendant or his representative, and appealed to this court. *Smith & Melton* v. *Walker*, 6 *S. C.* 169; *Brown* v. *Morris*, 10 *S. C.* 468 ; *Claussen* v. *Fultz*, 13 *S. C.* 476. " Defenses and causes of action once presented and considered cannot be again asserted in another

suit without a violation of the principles of *res adjudicata.*"
*Freem. Judg.,* § 284.

It is true, that the doctrine of *res adjudicata* does not apply
to mere interlocutory orders made in the ordinary progress of
the case. In such orders, granted or refused upon summary
application, it has been held that they are not so far conclusive
as to prevent the same matter being drawn in question again in
the regular form of a suit. But the reason of that rule does
not apply where the matter, conclusive and final in its character,
is gravely discussed and the decision is appealable. *Dwight* v.
*St. John,* 25 *N. Y.* 203. In that case, the plaintiff gave in
evidence the papers upon a motion by the defendant in the
Supreme Court to have the judgment canceled. Upon the
coming in of the referee's report, the court denied the motion.
The party brought an action to have the judgment canceled,
and the court sustained the plea. The court said : " Upon this
point it is to be observed that some decisions (made before the
existence of the code), especially that of *Simpson* v. *Hart,* 14
*Johns.* 63, are chiefly based upon the ground that such summary
proceedings as they passed upon, were heard without full proof,
and were not reviewable ; whereas, in the case before us, the
hearing was upon full proofs, and the code has entirely taken
away the other ground by making the proceedings liable to
review. Since, then, a full hearing, with the right of appeal, was
open to the defendant on that motion, how is he to avoid the
binding effect of that decision, so far as it covers what was
actually and necessarily tried ? " *Freem. Judg.,* § 325. So far
as concerns the right claimed by the plaintiffs to question the
validity of the attachment lien of Cole & Co., for alleged irreg-
ularity in the proceedings, the matter is *res adjudicata.* *Exrs.
of Tate* v. *Hunter,* 3 *Strobh. Eq.* 145.

But, conceding this, it is insisted that the decision of Judge
Fraser related only to the attachment, and did not undertake to
decide the validity of the judgment obtained by Cole & Co.
against Shannon, and the sale of the land thereunder to Ira B.
Jones ; that if the attachment itself is beyond their reach, they
may still impeach the judgment, and set aside the sale upon
another and distinct ground, viz. : On account of an alleged

jurisdictional defect in the rendition of said judgment. It seems that the defendants Cole & Co. sued Shannon, and on the same day had the attachment above spoken of issued against him; that, as Shannon was absent from the State, they procured an order for publication against him January 27th, 1881, and publication was actually commenced on February 2d, but the summons having been personally served on the defendant in North Carolina, on that day the publication was discontinued, and on March 10th following, forty-two days after the order of publication, and more than twenty days after the actual service of the summons, the order for judgment was entered.

The defendant Shannon makes no objection to the judgment, and the plaintiffs, subsequent judgment creditors of Shannon, claim that they have the right to set aside said judgment, for the reason that it was rendered prematurely before sixty days from the order of publication had expired.

It will be observed that the plaintiffs were not parties to the action of Cole & Co., and had no possible connection with the judgment rendered in that case, except that they also were creditors of Shannon, and had attached the land in controversy when the judgment was pronounced.

This must, therefore, be regarded as a proceeding on the equity side of the court, for, as a new action at law, it could not be maintained even by the defendant Shannon, himself. His only remedy for alleged irregularity, or illegality in the proceeding which resulted in the judgment, was to move in the action itself to set it aside. "For the mere fact of its existence destroys the basis of right on which such subsequent action would have to rest. If the confession (judgment) is insufficient in form, or by any reason void, advantage must be taken of such fact by a motion in which the judgment was rendered, having for its direct object the vacation or modification of the judgment, and by appeal from the decision of the court on such motions. If no such direct proceeding is taken, the validity of the judgment cannot be collaterally called in question in any subsequent action at law." *Southern Porcelain Manufacturing Company* v. *Thew,* 5 S. C. 8.

Can third parties ask equitable relief to set aside a judgment

at law upon the ground of illegality or irregularity in the proceedings in which the judgment was obtained? It is certain by the general rule, that none but the parties to a judgment can have it set aside. As Mr. Freeman says: "Every litigant, if an adult, is presumed to understand his own interests, and to be fully competent to protect them in the courts. He has the right to waive all irregularities in proceedings by which he is affected and is entitled to exclusively decide upon the propriety of such waiver. To allow disinterested third persons to interfere in his behalf, and to undertake the management of his business, according to their judgment, would create intolerable confusion and annoyance, and produce no desirable result. To permit third persons to become interested after judgment, and overturn adjudications to which the original parties made no objections, would encourage litigation and disturb the repose beneficial to society." And again, at section 512: "No person will be permitted to proceed in equity against a judgment or decree to which he was not a party, and which did not at its rendition affect any of his rights. If the parties to an adjudication are satisfied with it, no outside persons will be permitted to intermeddle with it at law or in equity." "The court is not bound to set aside a judgment on any ground of error or irregularity, except at the instance of the defendant; judgment is not void because it is erroneous. If it be rendered by a court of competent jurisdiction, it must stand until arrested or reversed." *Camberford* v. *Hall*, 3 McC. 345.

To this rule there are some well-recognized exceptions, limited, as we think, to those strangers to whom the judgment, if given full credit and effect, would be prejudicial in regard to some pre-existing right; and to the assertion of such rights as are known as equities, and administered in chancery. As, for instance, a junior judgment creditor may have an action to set aside a senior judgment obtained by imposition or fraud. It will be observed that this complaint does not allege matters either directly importing a fraud implicating the defendants Cole & Co., nor does it appear that any equity exists arising out of accident or mistake or any of the ordinary grounds of equity jurisdiction.

The question, then, arises, Have the plaintiffs an equity to set

aside the judgment of Cole & Co. against Shannon upon the ground of irregularity in the proceedings at law? A judgment in its nature is final and conclusive. It is well settled that there must always be "some special grounds for relief other than error of law. All errors of decision and proceeding must be settled in the tribunal in which they originated, or by appeal to some appellate tribunal; and in no case will the Court of Equity take upon itself a revisory jurisdiction. A court of equity will not set aside or enjoin a judgment on the ground of error or mistake in the judgment of the court of law." *Mc-Dowall* v. *McDowall, Bailey Eq.* 330 ; 9 *Rich. Eq.* 531 ; *Freem. Judg.,* § 487, and authorities.

It is earnestly insisted, however, that reference is here made only to "mere irregularities," that the principle does not apply where the defect involves the jurisdiction of the tribunal which pronounced the judgment; but that in such case the judgment is absolutely void, and all persons whose interests are affected injuriously thereby possess the right, in the nature of an equity, to have it declared a nullity at any time or in any court. This seems to us a new question. We remember no case like it in the books, except perhaps that of the *Southern P. M. Company* v. *Thew, supra,* in which the right was distinctly denied. We have not been referred to any case which goes to the extent here demanded.

The distinction between jurisdictional defects and mere irregularities, void and voidable, is well understood, but it is not so well settled what imperfections are mere irregularities or what are jurisdictional and make the judgment absolutely void. It would contribute much to certainty in the administration of the law, if some infallible test of the question in all cases could be found, but in the multitude of opinions upon the subject, we have not been able to find such principle. This difficulty is greatly increased when the question is made by third parties as an equity, in a jurisdiction other than that in which the judgment was rendered. In the case of *Walker & Bradford* v. *Roberts,* 4 *Rich.* 561, the court ventured to give a definition of irregularity, as follows : " Irregularity consists in omitting to do something necessary to the orderly progress of the action, or

doing it at an improper time. It does not affect the plaintiff's right of action."

But the question still recurs, What does and what does not affect the plaintiff's cause of action? The judgment of Cole & Co. was pronounced by the Court of Common Pleas, which had general jurisdiction. It certainly had jurisdiction of the subject-matter, and made more than ordinary efforts to obtain jurisdiction of the person of the defendant Shannon. For the purpose of making him a party before the court, the land in controversy, was attached, then an order of publication was made against him, which only stopped short of the "six weeks" required, for the reason that in the meantime Shannon had been personally served with summons in North Carolina. The defendant made no objection after actual notice, and now makes none. So far as the plaintiffs are concerned, no wrong was done then, and the point is purely technical.

Under these circumstances, can it be said that the court was so entirely without jurisdiction of the person of Shannon as to require us, at the instance of strangers and in another jurisdiction, to declare the judgment utterly void? We think not. It is not quite clear that the court did not have regular jurisdiction of the person of Shannon when the judgment was pronounced. It was rendered after the very land in controversy had been attached as the property of Shannon, after publication had been made against him, and more than twenty days after he had been personally served with summons in North Carolina. It is expressly declared in the code that the object of publication is notice. "When publication is ordered, personal service of the summons out of the State is equivalent to publication and deposit in the post office." And again, "From the time of service in a civil action, or the allowance of a provisional remedy, the court is deemed to have acquired jurisdiction and to have control of all the subsequent proceedings." *Code*, §§ 156 and 160. In New York, under similar provisions, there seems to be some difference of opinion as to when, in the case of personal service out of the State after publication, the service is complete. See 4 *How. Pr.* 246; 5 *Id.* 238; 7 *Id.* 313. But there seems to be no doubt that when an attachment has been issued, and no

summons served, the court has jurisdiction and control of the proceedings for certain purposes. 6 *How. Pr.* 47.

But it is enough to say that the judgment was formally pronounced by a competent tribunal, and as against third parties all presumptions must be allowed in favor of judicial proceedings. Granting all that appears in the record, the defendant Shannon may have waived service. In *Freem. Judg.*, at § 126, it is said: " There is a difference between a want of jurisdiction, and a defect in obtaining jurisdiction. At common law the defendant was brought within the power of the court by service of the brevin or writ. In this country the same object is accomplished by service of summons, actual or constructive, or some other process issued in the suit, or by the voluntary appearance of the defendant in person or by his attorney. From the moment of the service of process the court has such control over the litigants that all its subsequent proceedings, however erroneous, are not void. If there is any irregularity in the process or in the manner of its service, the defendant must take advantage of such irregularity by some motion or proceeding in the court where the action is pending. The fact that the defendant is not given all the time allowed him by law to plead, or that he was served by some person incompetent to make a valid service, or any other fact connected with the service of process, on account of which a judgment by default would be reversed upon appeal, will not ordinarily make the judgment vulnerable to a collateral attack. In case of an attempted service of process, the presumption exists that the court considered and determined the question whether the acts done were sufficient or insufficient. If so, the conclusion reached by the court, being derived from hearing and deliberating upon a matter which, by law, it was authorized to hear and decide, although erroneous, are not void. When, in a proceeding by attachment, the ground required by the statute for the issuing of the process has been laid, and the process has been issued and executed, the jurisdiction of the court is complete. Where there has been an insufficient publication, or an entire failure to publish, the proceedings are not so invalidated as to be made void." And many authorities in note.

It is well settled that the purchaser under an execution not void, but voidable only, will be protected in his title; and that the objection cannot be made by third persons. In *Henry* v. *Ferguson,* 1 *Bailey* 512, which was an action of trespass to try title, the plaintiff claimed under an execution issued on a judgment in *sci. fa.* It was objected that the *sci. fa.* was irregular. Colcock, J., said : "It was unnecessary to consider whether the judgment produced was irregular or not, for it has been repeatedly decided that third persons cannot inquire into the matter. It was an authority, so long as it stood unreversed, to issue the execution." See *Ingram* v. *Belk,* 2 *Strobh.* 207 ; *Lawrence* v. *Grambling,* 13 *S. C.* 127.

The judgment of this court is that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE SIMPSON concurred in the result.

MR. JUSTICE McIVER. I concur in the result. It seems to me that the judgment in favor of Cole & Co. was not open to the attack of the plaintiffs, inasmuch as the only person who could take advantage of the alleged insufficient service of the summons was the defendant Shannon. In the absence of any objection from him, the court will presume that everything necessary to perfect the service was done, or that he, by voluntary appearance or otherwise, waived the necessity for service. So that, even if the first attachment should be regarded as void, yet the sale under the judgment might be supported as a sale under a junior lien ; and as all that is asked for in the complaint, so far as we can learn from the case, is to have the sale set aside and the land resold, I concur in the result reached in the within opinion. Who may be entitled to the proceeds of the sale, is a question of much more difficulty, and, as we are not now called upon to decide it, I prefer to reserve my opinion.